# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAMILLE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-13-662-M |
| ) | |
| THE STATE OF OKLAHOMA ex rel. ) | |
| BOARD OF REGENTS FOR THE ) | |
| UNIVERSITY OF OKLAHOMA, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This case is set on the Court's September 2015 trial docket.

Before the Court is plaintiff's Motion for Summary Judgment, filed February 12, 2015. On June 22, 2015, defendant the State of Oklahoma ex rel. Board of Regents for the University of Oklahoma ("University") filed its response. Also before the Court is the University's Motion for Summary Judgment, filed June 22, 2015. On July 27, 2015, plaintiff filed her response, and on August 4, 2015, the University filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

From October 4, 2010 to March 2, 2012, plaintiff was the Admissions Counselor[1] for Cameron University ("Cameron") at the Harry S. Truman Army Education Center at Fort Sill ("Education Center") where Cameron maintains a presence, along with other universities. Two Cameron employees, as well as a work-study student, worked within the Cameron office space at the Education Center. One employee was an Academic Advisor, who reported to the Academic

---

[1] The job of the Admissions Counselor is to process admissions applications, review military schooling histories, evaluate transcripts, conduct placement testing, and handle freshman orientation.

Advisement Center on the Cameron main campus; the other employee was an Admissions Counselor, who reported to the Admissions Office on the Cameron main campus.

Zoe DuRant, the Director of Admissions for Cameron, was plaintiff's direct supervisor.[2] Jamie Glover, Associate Vice President for Enrollment Management at Cameron, was Ms. DuRant's direct supervisor during plaintiff's employment with Cameron. Beth Young was the Academic Advisor during plaintiff's employment at Cameron. Emily Carter was the undergraduate work-study student for Cameron's Advisement Center. Priscilla Sacks, a civil services officer, runs the Education Center.[3]

As early as the Spring of 2011, Ms. DuRant began receiving complaints about plaintiff's job performance. On March 11, 2011, Ms. Sacks, via email, requested Ms. DuRant call her to discuss issues regarding plaintiff. On April 7, 2011, Ms. Sacks emailed Ms. DuRant again regarding plaintiff's conduct at the Education Center. After following up with Ms. Sacks and plaintiff, Ms. DuRant counseled plaintiff to do what she was supposed to do while at work.

On August 26, 2011, Ms. Sacks advised Ms. DuRant she was still having communications problems with plaintiff. In the Fall of 2011, Ms. DuRant further discussed plaintiff's job performance with plaintiff. On February 10, 2012, Ms. Carter notified Kerry Larson, the Director of the Academic Advisement Center at Cameron, of concerns with plaintiff's job performance. On February 12, 2012, Ms. Sacks emailed Ms. DuRant an anonymous Interactive Customer Evaluation ("ICE") comment where a student complained plaintiff was rude and disrespectful. Subsequently,

---

[2]Ms. DuRant's office, however, was on Cameron's main campus.

[3]Ms. Sacks is not a Cameron employee. Ms. Sacks has the responsibility for the operation of the Education Center and works closely with each of the universities represented. Ms. Sacks was not plaintiff's supervisor.

Ms. DuRant was advised of a second negative ICE complaint about plaintiff. On February 22, 2012, Ms. Sacks notified Ms. DuRant of an in-person complaint against plaintiff made by a supervisor within the Department of the Army and requested plaintiff be reassigned from the Education Center.[4] Ms. Sacks declined Ms. DuRant's offer to frequently monitor plaintiff's job performance at the Education Center and emailed Ms. Glover requesting plaintiff be removed from the Education Center immediately.

On February 23, 2012, Ms. DuRant met with plaintiff to discuss the complaints and instructed plaintiff to report for work on the Cameron main campus. Cameron was going to reassign plaintiff to the role of Admissions Specialist on the main campus; Tracie Ritchey, who occupied the Admissions Specialist position on the main campus, was going to be reassigned to the job of Admissions Counselor at the Education Center. After meeting with plaintiff, Ms. DuRant received an email from plaintiff acknowledging she would work on the main campus but would be visiting Human Resources before arriving to work.

On February 24, 2012, plaintiff emailed Ms. Glover and Chase Massie, the Director of Human Resources at Cameron, claiming Ms. Young intentionally and maliciously completed anonymous complaints against plaintiff and utilized inappropriate and unprofessional dialogue in the office where she openly discussed racial issues, confidential student information, and sexuality.[5] On February 29, 2012, Ms. DuRant and Ms. Glover met with plaintiff and presented her with a job description of the Admissions Specialist position and a Payroll Action Form, which outlined

---

[4]This was the first time Ms. Sacks had ever requested someone be removed from the Education Center.

[5]Based upon all of the evidence submitted by the parties, this was the first time plaintiff complained of racially charged speech at the Education Center.

reassignment from an Admissions Counselor to an Admissions Specialist. The salary for the Admissions Specialist position to be filled by plaintiff would be $30,000.[6] On February 29, 2012, plaintiff requested a meeting with Tom Russell, the Equal Opportunity Officer for Cameron.

On March 1, 2012, plaintiff notified Ms. Glover and Ms. DuRant of her meeting with Mr. Russell and of her meeting with Cameron President, Dr. Cindy Ross. On March 2, 2012, Ms. DuRant, Ms. Glover, and Mr. Massie met with plaintiff. Ms. Glover had prepared a memorandum, which was read aloud to plaintiff. Plaintiff was instructed that if she refused to transition to the assigned position, it would be considered abandonment of her position at Cameron and she would be terminated. On March 6, 2012, Ms. Glover executed a Cameron University Resignation/Termination Form after plaintiff failed to return to work.

On April 16, 2013, plaintiff filed the instant action. Plaintiff alleges the following causes of action against the University: (1) race discrimination, (2) retaliation, and (3) hostile work environment, all in violation of Title VII of the Civil Rights Act. Both plaintiff and the University have now moved for summary judgment as to all of plaintiff's causes of action.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving

---

[6]Cameron believed that this was the same amount that plaintiff was currently being paid. However, plaintiff had previously received a pay increase and was currently being paid $30,600.

party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

In addressing plaintiff's discrimination and retaliation claims, the Court, because plaintiff has not presented any direct evidence of discrimination or retaliation, must apply the three-part test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a prima facie case of discrimination or retaliation. *See Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). Second, once plaintiff has established a prima facie case, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *See id.* Third, if defendant has provided a legitimate, non-discriminatory reason, the burden shifts to plaintiff to prove the employer's proffered reason was pretextual. *See id.*

A. Race discrimination

To state a prima facie case of race discrimination, plaintiff must show she (1) belongs to a protected class, (2) suffered an adverse employment action, (3) was qualified for the position at

issue, and (4) was treated less favorably than others not in the protected class. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Employer conduct may be an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, assignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

> The Tenth Circuit liberally defines the phrase "adverse employment action." Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take "a case-by-case approach," examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.

*Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (internal quotations and citations omitted).

Having carefully reviewed the parties' submissions, the Court finds the job reassignment from the Education Center to Cameron's main campus – the reassignment that plaintiff failed to accept, which resulted in plaintiff's termination for job abandonment – is insufficient to establish an adverse employment action. Plaintiff has presented no evidence that the reassignment would in any way affect the status of her employment or impact her future advancement opportunities. Further, the evidence presented by the parties conclusively shows that plaintiff's job responsibilities as the Admissions Specialist would have been substantially similar to her job responsibilities as the Admissions Counselor and that plaintiff's pay would have been substantially similar to the pay plaintiff was receiving as an Admissions Counselor. The only difference in the positions is the location at which plaintiff would be working. The Court finds that this geographic reassignment is not sufficient to constitute an adverse employment action.

Accordingly, the Court finds the University is entitled to summary judgment as to plaintiff's race discrimination claim.

B. Retaliation

To state a prima facie case of retaliation, plaintiff must show: (1) she engaged in protected activity; (2) she suffered a materially adverse action either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). Having carefully reviewed the parties' submissions, the Court finds plaintiff has failed to show that she suffered a materially adverse action either after or contemporaneous with her protected activity. First, as set forth above, the Court finds the job reassignment from the Education Center to Cameron's main campus is insufficient to establish an adverse employment action. Additionally, there is absolutely no evidence that plaintiff made any complaints about any unlawful conduct under Title VII prior to being notified of her reassignment. All of the evidence submitted shows that no complaints were made until after plaintiff was notified of her reassignment.

Accordingly, the Court finds the University is entitled to summary judgment as to plaintiff's retaliation claim.

C. Hostile work environment

> To survive summary judgment on a racially hostile work environment claim, a plaintiff must show that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus. A plaintiff cannot meet this burden by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments.

7

*Chavez v. New Mexico*, 397 F.3d 826, 831-32 (10th Cir. 2005) (internal quotations and citations omitted).

Plaintiff alleges the following conduct in support of her hostile work environment claim: (1) Ms. Young stated that her daughter's ex-husband is a white supremacist that has Nazi tattoos all over his body; (2) Ms. Young stated she is from a racist family and her dad and males in her family are racist and would never accept blacks into the family; (3) Brenda Dally asked "How do black people get their hair like that?"; (4) while trying to get plaintiff to join ancestry.com, Ms. Dally remarked, "My family probably once owned your family back in slavery days."; (5) Ms. Dally made comments about an African-American male's marriage to a white woman and that the male was incompetent, lazy, and mean; and (6) Ms. Dally asked plaintiff if other African-American employees were nice to her because she was "black," while rubbing plaintiff's hand to emphasize her skin color.[7] The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has not set forth sufficient evidence showing that any alleged harassment was pervasive or severe enough to alter the terms, conditions, or privilege of her employment. At most, the alleged comments were only sporadic and simply do not constitute a hostile work environment.

Accordingly, the Court finds the University is entitled to summary judgment as to plaintiff's hostile work environment claim.

---

[7]The University disputes that any of these statements were made.

IV. Conclusion

For the reasons set forth above, the Court DENIES plaintiff's Motion for Summary Judgment [docket no. 99] and GRANTS the University's Motion for Summary Judgment [docket no. 134].

**IT IS SO ORDERED this 24th day of August, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE